SCHWARTZ, ALAN R., Associate Judge.
The defendants Fames and Sims were the pilot and co-pilot respectively of a plane which arrived in Boca Raton from the Bahamas carrying 170 pounds of suspect marijuana. They separately appeal from their convictions and sentences, following a jury trial, for possession of in excess of 100 pounds of cannabis, a second degree felony under the then-applicable provisions of Section 893.13(l)(a)2, Florida Statutes (1977).
*460 Each defendant first claims error in the denial of his pre-trial motion to suppress the contraband as the result of an unlawful search and seizure. Because, however, the record shows that no objection to the introduction of the cannabis on this ground was raised at the trial, we are unable to consider this issue on appeal. D. J. C. v. State, 400 So.2d 830 (Fla. 3d DCA 1981); Alvarez v. State, 400 So.2d 768 (Fla. 4th DCA 1981); Roban v. State, 384 So.2d 683 (Fla. 4th DCA 1980); see generally Caster v. State, 365 So.2d 701 (Fla.1978). As to this point, which is the only one which concerns the underlying guilt of the defendants, the judgments below are therefore affirmed.
It is next argued that the state did not carry its burden of showing that the defendants were in possession of more than 100 pounds of unlawful cannabis sativa L., as opposed to nonprohibited stalks, stems, or seeds. See Purifoy v. State, 359 So.2d 446 (Fla.1978). We find merit in this contention. At the trial, the only testimony concerning the nature and quantity of the material in question was that of a chemist, Jay Pintacuda. He stated that he secured samples of the substance simply by taking a handful from each of four bales of the material, which had a total gross weight of 170 pounds. He acknowledged that although marijuana on the bottom of such a receptacle would likely contain a larger portion of seeds, he could not and did not actually reach to the bottom in taking the samples. Pintacuda then took one gram from each bale, separated the prohibited material from the chaff and stems, and without using a scale and without a showing that he was expert in arriving at such a determination, made a visual estimate that 70% of the sample was cannabis, and 30% lawful material. This was the sole basis upon which he stated that he “fe[lt] confident we have over ... a hundred pounds of controlled marijuana.” Most significantly, however, he admitted that
I cannot say beyond a reasonable scientific certainty ... I feel confident of my conclusions, but that is only my opinion.
It seems obvious that this testimony was insufficient as a matter of law affirmatively to establish, as the prosecution was obliged to do, that more than 100 pounds of prohibited material was involved. Purifoy v. State, supra; Blair v. State, 384 So.2d 685 (Fla. 4th DCA 1980); Leavitt v. State, 369 So.2d 993 (Fla. 1st DCA 1979); see, Weisz v. State, 392 So.2d 22 (Fla. 4th DCA 1980). There was plainly no direct evidence of this fact — no one weighed the actual cannabis and found that more than 100 pounds registered on the scale. The state was forced to rely entirely on the essentially circumstantial evidence of the chemist’s estimate of the comparative weights of his sample. For two separate reasons, this extrapolation did not, as required when such evidence is relied upon, e..g., Davis v. State, 90 So.2d 629 (Fla.1956), .exclude a reasonable hypothesis that, in fact, there was less than 100 pounds of marijuana on the plane.
First, Pintacuda’s estimate was no more than a bare conclusion of what “appeared” to be the relative proportions of quantities of separate materials neither of which was actually weighed. Since he was not qualified as an expert in making such estimates,[1] this opinion of that percentage was, pardon the pun, entitled to little, if any, weight itself. See Allapattah Community Association, Inc. of Florida v. City of Miami, 379 So.2d 387, 393 (Fla. 3d DCA 1980). It was surely not impossible that his “rough estimate” was off by no more than 12% making the percentage of cannabis only 58% of the sample and the unlawful portion of the whole 170 pounds therefore less than 100.[2] Just as important, since it may well have contained a significantly smaller percentage of seeds, the sample itself was not shown to be a fair representation of the entire quan *461 tity.[3] In both of these respects, this case differs significantly from Dorsey v. State, 367 So.2d 692 (Fla. 1st DCA 1979), upon which the state relies almost exclusively. In Dorsey,[4] the quantity of cannabis involved — which, unlike the present instance, was scientifically measured — was almost five times the prohibited amount (24.2 grams vs. five grams) rather than only 1.7 times, as here. Thus, the expert in Dorsey would have had to be very wrong indeed to result in an invalidation of his opinion. Furthermore, it was uncontradicted that the sample tested in Dorsey “was representative” of the remaining amount. Just the opposite is true of this case. In sum, as shown by his candid refusal to state his opinion beyond a reasonable scientific certainty, see, People v. Davis, 95 Misc.2d 1010, 408 N.Y.S.2d 748, 750-51 (Dutchess Co.Ct.1978), modified on other grounds, sub nom., People v. Houston, 72 A.D.2d 369, 424 N.Y.S.2d 726 (1980), it was just the chemist’s guess that over 100 pounds of prohibited substance were present in the bales he tested. But a guess, even a good or an informed one, cannot be the basis of a criminal conviction.
For these reasons, we order that the convictions under review be reduced to ones for the possession of more than five grams and less than 100 pounds of cannabis, a third degree felony under Section 893.13(l)(a)2, Florida Statutes (1977). The cases are remanded for resentencing accordingly.[5]
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
LETTS, C. J., and GLICKSTEIN, J., concur.

. He was stipulated to be an expert only in making chemical analyses of the material.

. Indeed, the chemist said that he himself had seen other quantities of marijuana in which the percentage of nonprohibited material was as much as 40-45%.

. Ibid.

. We assume arguendo that Dorsey was not overruled by the later first district opinion in Leavitt v. State, supra. But see, opinion of Ervin, J., dissenting in part in Leavitt, at 369 So.2d 994.

.The fact that the resentencing must comply with the requirements of both Villery v. Florida Parole and Probation Commission, 396 So.2d 1107 (Fla.1981) and the double jeopardy clauses of the United States and Florida Constitutions makes it unnecessary to consider the merits of Fames’ separate attack on the sentence imposed on him below.