532 So.2d 724 (1988)
Ricky Coleman ERWIN, Appellant,
v.
STATE of Florida, Appellee.
No. 87-1423.
District Court of Appeal of Florida, Fifth District.
September 22, 1988.
Rehearing Denied November 2, 1988.
C. Fred Partin, Louisville, and Fred Haddad, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
COBB, Judge.
Ricky Coleman Erwin was convicted of, inter alia, arson of an occupied structure pursuant to section 806.01(1)(c), Florida *725 Statutes (1985).[1] The charge arose from the burning of a barn which contained living quarters at one end. Section 806.01(1)(c) provides as follows:
806.01 Arson. 
(1) Any person who willfully and unlawfully, by fire or explosion, damages or causes to be damaged:
* * * * * *
(c) Any other structure that he knew or had reasonable grounds to believe was occupied by a human being, is guilty of arson in the first degree, which constitutes a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
In the instant case, the only evidence presented by the state to show that someone would know that the barn was occupied by a human was evidence that it was normal practice for workers at horse farms to keep their boots outside the door and the fact that cars belonging to the workers were parked outside the "main gate." No evidence was presented to show Erwin knew that the barn was occupied or that he even knew that the barn contained an apartment. Additionally, there was no evidence at all that the actual torchman knew that the barn was occupied. Because of this lack of evidence, the trial court erred in denying Erwin's motion for judgment of acquittal on this charge. However, the evidence does support a conviction under section 806.01(2), Florida Statutes (1985) on the second degree felony of arson of an unoccupied structure. Accordingly, the cause is remanded to reduce the judgment to that offense and for resentencing. Appellant's remaining points on appeal are without merit, and the judgments and sentences on the remaining counts are affirmed.
In response to the concerns evinced by the dissent, we note that none of the prosecutor's closing comments evoked a contemporaneous objection, nor was any curative instruction ever requested. See Ferguson v. State, 417 So.2d 639 (Fla. 1982). A motion for mistrial was made by the defense after the jury instructions were given, immediately prior to retirement of the jury,[2] based upon the contention that the prosecutor had improperly commented upon the defendant's failure to testify. Although two comments were involved, the ground for the motion was singular: reference by the state to the defendant's failure to take the witness stand. The mistrial motion was stated by defense counsel as follows:
During his [the prosecutor's] summation, I understood him to make two references to the defendant's failure to testify. One of those was when he made the statement that, what you have is Oscar Hamilton [the state's key witness] pitted against Dr. Erwin, and at the end, when he argued the defense has subpoena power; that we could have brought witnesses who could have been called, people who were involved or might have been involved, basically to rebut the state's case, a burden that we don't have, and an improper comment on the defendant's failure to testify.
The state's case below rested primarily upon the credibility of one witness, Oscar Hamilton, whom the state contended was hired by the defendant to commit arson. The prosecutor, advocating Hamilton's credibility during closing argument, stated:
What's at issue here today  and we have, quite frankly, bottom line, Oscar Hamilton pitted against Dr. Erwin, and this is going to be a test of whether a man, whether he's rich or poor, black or white, educated or uneducated, is above the law. That's the decision that you're going to have to face, based on the facts and the evidence presented in this case.
This statement, whether proper or improper, was not a comment on Erwin's failure to testify, the argument presented to the trial court. On appeal, Erwin relies on Bertolotti v. State, 476 So.2d 130, 134 (Fla. *726 1985), and now contends that this comment constituted fundamental error because of its inflammatory pitting of class against class. In Bertolotti, however, even in the face of three improper prosecutorial statements during closing argument (one of which was susceptible of interpretation as a comment on the defendant's failure to testify), the Florida Supreme Court did not find the misconduct so outrageous as to taint the validity of the trial proceedings. As stated in State v. Murray, 443 So.2d 955 (Fla. 1984), prosecutorial error alone does not warrant automatic reversal of a conviction. In the instant case, we cannot find that this one isolated reference to the societal differentials between Hamilton and Erwin was so sinister as to vitiate the entire trial proceedings. See Cobb v. State, 376 So.2d 230 (Fla. 1979); Perry v. State, 146 Fla. 187, 200 So. 525 (1941).
The other prosecutorial comment which was urged as a basis for the mistrial motion was the following:
Mr. Turner, in his final closing, may well bring up the point, well, where was this witness or where was that witness? Maybe there were some other people that somehow were involved with that farm or with this incident and their names came up. Just remember that the defense has the same rights as the State of Florida and the same subpoena powers as the State of Florida to hail in any witness that they want to put testimony on before you.
Again, we agree with the trial judge that this comment did not constitute a comment on the defendant's failure to testify. However, it was improper since it was not invited by the opening argument of the defense, which also had final closing argument. Since there was no contemporaneous objection to the comment, the issue now is whether or not it constituted fundamental error. Clearly, it did not. See Sastre v. State, 487 So.2d 1137 (Fla. 3d DCA 1986); Gordon v. State, 469 So.2d 795 (Fla. 4th DCA), review denied, 480 So.2d 1296 (Fla. 1985); Blackburn v. State, 447 So.2d 424 (Fla. 5th DCA 1984); Jordan v. State, 419 So.2d 363 (Fla. 1st DCA 1982).
The dissent's concern that the prosecutor's allusion to the subpoena powers of the defense referred to the actual torchman, Aaron Hamilton, Oscar's brother, who was not available at trial because of invocation of his fifth amendment privilege, is unfounded. Preceding the prosecutor's comment quoted above, he told the jury that the absence from trial of Aaron Hamilton constituted a weakness in the state's case, and that Aaron Hamilton was absent because of "legal reasons." Certainly, that explanation was sufficient to exclude Aaron Hamilton from the subsequent comment in regard to any possible witnesses who could have been subpoenaed by either the state or the defense.
The dissent correctly notes that codefendant Aaron Hamilton, the putative torchman hired by Oscar Hamilton, was acquitted of arson in a subsequent trial. His testimony at that trial, however, was far from exculpatory of the defendant Erwin. In point of fact, Aaron testified at his own trial that Oscar hired him at the behest of Ricky Erwin to burn the victimized property. After the fire, according to Aaron, he went with Oscar to Erwin's house for receipt of payment: "a little old bag of money." There is no way this testimony would have acquitted Erwin. Moreover, even if Aaron Hamilton's subsequent testimony were exculpatory of Ricky Erwin, that would not entitle Erwin to a new trial. As held in Potts v. State, 430 So.2d 900, 903 (Fla. 1982), if co-perpetrators are tried in separate trials, the judgments, even though inconsistent, are independent of one another and stand or fall on their own merits. See also Standefer v. United States, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
ORFINGER, J., concurs.
SHARP, C.J., concurs in part, dissents in part, with opinion.
SHARP, Chief Judge, concurring in part, dissenting in part.
While I agree with the majority opinion that there was insufficient evidence to sustain *727 the conviction for first degree arson (§ 806.01(1)(c)), I would reverse all of the arson convictions as well as the solicitation and conspiracy counts, and remand for a new trial because of improper comments by the prosecution in closing argument which compounded the error and resulted in an unfair trial.
In closing argument, the prosecutor stressed that the defendant was white and wealthy and well-educated, and the state's star witness, Oscar Hamilton, was black and poor, and uneducated, and therefore should be believed, because no man is "above the law." A prosecutor is prohibited from commenting on matters unsupported by the evidence produced at trial. Huff v. State, 437 So.2d 1087 (Fla. 1983). The state's case depended upon the jury believing Oscar's testimony and he, in fact, gave various conflicting statements. References to class, race, or level of education are inappropriate measures of credibility of guilt or innocence. Had the positions been reversed, and the same comments made, I am sure error would have been found after an underprivileged black defendant was convicted. See Salvador v. U.S., 505 F.2d 1348 (8th Cir.1974) (although not reversible due to absence of contemporaneous objection, racial slur is error).
The prosecutor also said in his closing argument that there may have been other witnesses or people involved in the arsons, but "[j]ust remember that the defense has the same rights as the State of Florida and the same subpoena powers as the State of Florida to haul in any witness that they want to put testimony on before you." As the prosecutor must have well-known when making those comments, one witness (the alleged "torchman", Aaron Hamilton) was not available to testify for the defense because he had not yet been tried, and had invoked his Fifth Amendment privilege.
Aaron later testified at his own trial in a manner that might have exculpated the appellant in this trial, at least as to the arson counts. He was (ironically) acquitted. He testified that he did not set any fires. He and Oscar only planned to rip-off Erwin and take his money. When Aaron arrived at the barns, they were already on fire. Aaron did not know who set the fires, but he thought he and Oscar had been "set-up." While no objection was made to any of the comments, I think they combined to constitute fundamental error, and in the interest of justice, the appellant should be granted a new trial. Florida Dept. of Corrections v. Bradley, 510 So.2d 1122 (Fla. 1st DCA 1987) (fundamental errors need not be preserved for review); Coleman v. Allen, 320 So.2d 864 (Fla. 1st DCA 1975), cert. den., 336 So.2d 105 (Fla. 1976) (fundamental error affects the very essence of the lawsuit).
NOTES
[1] Erwin was also convicted of two counts of arson of unoccupied structures, conspiracy to commit arson of a dwelling and solicitation to commit arson of a dwelling.
[2] See State v. Cumbie, 380 So.2d 1031 (Fla. 1980).